**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Clifford McRARY, Defendant-Appellant.**

**No. 80–5689.**

United States Court of Appeals,
Fifth Circuit.*
Unit B

Jan. 11, 1982.
Rehearing Denied Feb. 23, 1982.

---

5. *Jaeger v. United States*, 394 F.2d 944 (D.C. Cir. 1968).

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Thomas M. Sherouse, Miami, Fla., court appointed, for defendant-appellant.

Sonia Escobio O'Donnell, Asst. U. S. Atty., Miami, Fla., John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Section, Tax Div., Dept. of Justice, Washington, D. C., for the U. S.

Before HILL and HENDERSON, Circuit Judges, SMITH **, Judge.

HENDERSON, Circuit Judge:

In this appeal we are faced with a novel legal issue growing out of an unique factual situation which began as a routine kidnapping prosecution.

On July 21, 1974, the appellant, Clifford McRary, met with Earl Widener, captain of the sport fishing boat "Spook," and made arrangements for a boat trip from Key West to the Dry Tortugas. Early the next morning, McRary, his wife Patricia and their two children met Captain Widener and First Mate Mollie DeWitt aboard the "Spook" and set out for the Dry Tortugas. About 8.5 miles from the Florida coast, McRary and his wife produced guns and demanded that they be transported to Cuba. Captain Widener changed course and the "Spook" sailed into Havana harbor later that evening. After some delay, Captain Widener and DeWitt were subsequently permitted to return to the United States in the "Spook." McRary was arrested by Cuban authorities and convicted of *Contra Las Seguridad Del Estado* (apparently a catch-all phrase for any crime against Cuba). After serving a prison sentence in Cuba, McRary returned to the United States in 1978 and was arrested and charged with kidnapping. His first conviction was reversed by this court because he was not afforded a sufficient opportunity to assert an insanity defense. *United States v. McRary*, 616 F.2d 181 (5th Cir. 1980). McRary was retried and again convicted, and now raises two issues for our consideration on appeal. For reasons we explain later, we reverse.

---

** Honorable Edward S. Smith, Judge for the U.S. Court of Claims, sitting by designation.

McRary's first assignment of error deals with the federal jurisdictional basis of his indictment and conviction. The kidnapping statute, in relevant part, reads as follows:

(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by a parent thereof, when

(1) the person is wilfully transported in interstate or foreign commerce; [or]

(2) any such act against the person is done within the special maritime and territorial jurisdiction of the United States;

\* \* \* \* \* \*

shall be punished for any term of years or life.

18 U.S.C. § 1201. The indictment, tracking the language of 18 U.S.C. § 1201(a)(1), alleged that McRary unlawfully caused the captain and crew of the "Spook" to be "transported in foreign commerce." [1] McRary's counsel objected to transportation in foreign commerce as a means of obtaining federal jurisdiction before the trial and renewed the objection at the close of the government's case. Record, vol. 6 at 7, 107. He also specifically challenged the judge's charge to the jury that jurisdiction was predicated on 18 U.S.C. § 1201(a)(1) (foreign commerce) and submitted a request to instruct the jury in the language of 18 U.S.C. § 1201(a)(2) (high seas jurisdiction).[2] The

district court, apparently relying on the testimony of Captain Widener that Florida territory extends approximately 10.5 miles (three Spanish leagues) out to sea, Record, vol. 6 at 88, 89, overruled the motions and instructed the jury that in order to convict they must find that McRary transported the crew in foreign commerce.[3] On appeal, McRary complains that the instruction was erroneous and that the judge's refusal to use the "high seas" jurisdictional basis in his charge requires reversal. We agree.

In order for McRary to prevail, he must overcome two hurdles. First, he must show that the jurisdictional grounds alleged in the indictment and charged to the jury were incorrect and second, that such an error affected his substantial rights and requires reversal. Fed.R.Crim.P. 52(a); see, e. g. United States v. Hughes, 658 F.2d 317 (Former 5th Cir. 1981). In response, the government contends that the jurisdictional premise alleged and charged was proper and, in the alternative, that the basis for federal jurisdiction is not an element of the offense, so any error was harmless.

 Federal jurisdiction could not be predicated here on transportation in foreign commerce. Contrary to the belief of Captain Widener and, apparently, the trial judge, the territorial jurisdiction of the United States extends only three miles from this country's shores. *United States*

---

1. The government's claim that McRary was charged with "every element of 18 U.S.C. § 1201, including 'travel in foreign commerce' and 'special maritime and territorial jurisdiction,'" *Appellee's Brief at 11, is not correct.* The indictment alleges only that McRary "did knowingly and unlawfully transport and cause to be transported in foreign commerce ... [the] crew of the fishing vessel 'Spook', ..." in violation of 18 U.S.C. § 1201(a). There is no hint that the grand jury meant to charge the offense of kidnapping within the "maritime and territorial jurisdiction of the United States."

2. Title 18 U.S.C. § 1201(a)(2) confers jurisdiction where the kidnapping is perpetuated within the special maritime and territorial jurisdiction of the United States which includes any vessel on the high seas registered in the United States or at least partly owned by a United States citizen. 18 U.S.C. § 7.

For purposes of convenience, the special maritime jurisdiction mentioned in 18 U.S.C. § 1201(a)(2) and defined in 18 U.S.C. § 7, will be referred to as "high seas" jurisdiction.

3. The trial judge charged that:
There are three essential elements which must be proved beyond a reasonable doubt in order to establish the offense proscribed by this law:

\* \* \* \* \* \*

Third: That such person was thereafter transported in foreign commerce while so confined for kidnapping.

\* \* \* \* \* \*

Foreign commerce means commerce or travel between the United States and a foreign country. A person is transported in foreign commerce whenever he moves from the territory of the United States into a foreign country.
Record, vol. 7 at 397, 98.

*v. Louisiana*, 363 U.S. 1, 80 S.Ct. 961, 4 L.Ed.2d 1025 (1960). *Cunard Steamship Co. v. Mellon*, 262 U.S. 100, 43 S.Ct. 504, 67 L.Ed. 894 (1923); *United States v. Warren*, 578 F.2d 1058, 1064 n. 4 (5th Cir. 1978) (*en banc*); 4 M. Whiteman, International Law 1–14 (1965); W. Bishop, International Law: Cases and Materials 589–597 (1962).[4] It is undisputed that the kidnapping occurred 8.5 miles from shore and, hence on the high seas. This court has held, in facts similar to these, that there can be no transportation in foreign commerce where the would-be kidnappers contrive a plan in the United States to entice their victim into Mexico so that he may be abducted there by a Mexican national. *United States v. McInnis*, 601 F.2d 1319 (5th Cir. 1979). In reaching its decision in *McInnis*, the court noted that:

> In contrast to the cases cited to this court where the interstate transportation followed some illegal activity, [the defendants] did not contemplate any unlawful act before [the victim] crossed the international boundary. It is true that [the defendant] attempted to "decoy" [the victim] into Mexico, but, prior to his arrival in Mexico, no unlawful interference with [the victim's] actions was intended.[5]

601 F.2d at 1326. The government is correct, however, in pointing out that *McInnis* did not present the precise issue confronted

here. There, the plan originated in the United States, but the act necessary for federal jurisdiction to attach would not have transpired until the intended victim had crossed into Mexico. Consequently, there was no federal jurisdiction. The problem here is slightly different. We must determine whether "transports in foreign commerce" means merely forcing a kidnapped person to enter a foreign State or whether there is a requirement of a forced departure from the United States *and* a subsequent involuntary entry in a foreign State. We believe that the Congress intended the latter predicate for jurisdiction.

The purpose behind the federal kidnapping law was to prevent kidnappers from evading capture by moving from one jurisdiction to another. *Chatwin v. United States*, 326 U.S. 455, 66 S.Ct. 233, 90 L.Ed. 198 (1946). As originally enacted in 1932, Act of June 22, 1932, Ch. 271, §§ 1, 3, 47 Stat. 326, the Lindbergh law contained the following definition of "interstate or foreign commerce":

> Sec. 2. The term "interstate or foreign commerce," as used herein, shall include transportation from one State, Territory, or the District of Columbia to another State, Territory, or the District of Columbia, or to a foreign country; or from a

---

4. For the significance of Florida's claim to three Spanish leagues, *see United States v. Florida*, 363 U.S. 121, 80 S.Ct. 1026, 4 L.Ed.2d 1096 (1960). Another possible source of misunderstanding for the trial court might have been the belief that Florida's territorial limit was expanded by the contiguous zone. The contiguous zone extends from the three mile territorial limit to twelve miles out to sea. It is part of the high seas. While the United States exercises plenary power over the territorial sea subject only to the requirement that foreign vessels may not be interfered with unreasonably, the control of the United States over foreign boats in the contiguous zone is limited to the enforcement of customs, fiscal, immigration or sanitary regulations. *United States v. Warren*, 578 F.2d 1058 (5th Cir. 1978) (*en banc*); see generally, Art. 24, Convention on the Territorial Sea and the Contiguous Zone, 1958, 516 U.N.T.S. § 205; T.I.A.S. No. 5639 15 U.S.T. 1606; M. Whiteman, International Law at 482 (1965).

Cases in which the United States exercises extraterritorial jurisdiction because of its adherence to the objective principle of territorial jurisdiction, *see e. g. United States v. Postal*, 589 F.2d 862 (5th Cir.), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 40 (1979); Note, "*Double Jeopardy on the High Seas: International Traffickers Beware*, 10 Ga.J.Int'l. & Comp.L. 648 (1980), are clearly distinguishable because that theory of jurisdiction requires that the extraterritorial acts be intended to have effect in the United States.

5. The defendants in *McInnis* were charged with conspiracy to kidnap. The court held that a conspiracy which is conceived in the United States, the objective of which is to commit a kidnapping in a foreign country, is not illegal because the act, if completed, would not have been a crime. Here, as in *McInnis*, no unlawful act was committed prior to the victim's "unrestrained and uncoerced crossing of state and national boundaries. . . ." *United States v. McInnis*, 601 F.2d at 1326.

foreign country to any State, Territory, or the District of Columbia.

It is obvious that Congress meant both interstate and foreign commerce to include transportation from one state to another state or foreign country. The word "commerce" is consistently preceded in the statute by "interstate or foreign" without any hint that "commerce" should have separate meanings for each.[6] In addition, Congress expressly provided for the case such as the one here, a kidnapping on the high seas, by enacting § 1201(a)(2) (high seas jurisdiction). That section invokes federal jurisdiction for an unlawful seizure "within the special maritime and territorial jurisdiction of the United States." Section 7 of Title 18, in turn, includes the high seas in the definition of special maritime and territorial jurisdiction of the United States but necessarily restricts its reach to vessels owned in whole or part by United States citizens. If we adopt the government's view and construe "foreign commerce" to include acts committed on any vessel on the high seas after the vessel enters foreign waters, the restriction in § 1201(a)(2) (high seas) to vessels with a nexus to the United States would be in conflict with § 1201(a)(1) (foreign commerce).[7] Furthermore, the United States would be extending its jurisdiction to include acts committed in international waters even if there were no connection between the vessel and the United States. Such an expansion of domestic jurisdiction to vessels on the high seas with no attachment to the sovereign would be a clear violation of international law.[8] *United Nations Conference on the Law of the Sea— Convention on the High Seas*, Apr. 29, 1958, Multilateral, 450 U.N.T.S. 82, T.I.A.S. No. 5200, 13 U.S.T. 2312, Art. 2, 5, 6; *see United States v. Rodgers*, 150 U.S. 249, 14 S.Ct. 109, 37 L.Ed. 1071 (1893); *United States v. Louisiana*, 363 U.S. 1, 80 S.Ct. 961, 4 L.Ed.2d 1025 (1960); *United States v. Perez-Herrera*, 610 F.2d 289 (5th Cir. 1980); *United States v. Reagan*, 453 F.2d 165 (6th Cir. 1971); *United States v. One (1) 43-Foot Sailing Vessel*, 405 F.Supp. 879 (S.D.Fla. 1975). We therefore hold that the foreign commerce jurisdictional basis mandates that the kidnapping take place in the United States and that the victim be subsequently transported to a foreign State. Since it is uncontroverted that the kidnapping here occurred outside the United States, the trial court erred in instructing the jury on foreign commerce as the only jurisdictional element of the offense.

■■ The government, having lost the battle, seeks to win the war by asserting that the particular predicate for federal jurisdiction is not an element of the offense and any error in that respect would be harmless because federal jurisdiction was proved under § 1201(a)(2) (high seas jurisdiction). We reject this argument. When a federally created crime involves an area traditionally left to the domain of the states, the jurisdictional authority of the United States becomes a crucial part of the

---

**6.** Section 2 of the Lindbergh law was apparently consolidated into 18 U.S.C. § 10, which was enacted in 1948 to combine the scattered definitions of interstate and foreign commerce. The mere consolidation by the 1948 Revisors, of course, is not evidence of a change in legislative intent. *Alyeska Pipeline Service v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

**7.** Under the government's interpretation there would be no need to show that the vessel belongs to a United States citizen or be registered in the United States. If such a prerequisite could be read into the definition of foreign commerce by implication, foreign commerce jurisdiction would require precisely the same proof as that for the high seas and would therefore be redundant. The fact that Congress specifically supplied another jurisdictional ground for kidnapping clearly shows that it did not propose to encompass high seas jurisdiction by implication within that for foreign commerce.

**8.** An exception to this nexus requirement is found in every nation's power to punish any act of piracy committed on the high seas. See, e. g. Restatement (Second) of Foreign Relations Law of the United States, § 34 (1965). This "universal jurisdiction" is almost entirely limited to cases of piracy. *Id.* The government's definition of foreign commerce would grant jurisdiction to the United States in the case of any offense over which federal courts exercise jurisdiction by virtue of "interstate or foreign commerce" as defined in 18 U.S.C. § 10.

proof. *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); *United States v. Platenburg*, 657 F.2d 797 (Former 5th Cir. 1981); *United States v. Murrah*, 478 F.2d 762 (5th Cir. 1973). While the court in *United States v. Bankston*, 603 F.2d 528, 532 (5th Cir. 1979), does state that "the requirement that the defendant cross state lines merely furnishes a basis for federal jurisdiction and does not constitute an element of the offense, . . ." the statement is dicta and the case, like those cited as support for that statement, holds only that the government need not prove that a defendant *knew* he crossed state lines. *Id.* at 532; *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975); *United States v. Beil*, 577 F.2d 1313 (5th Cir. 1978), *cert. denied*, 440 U.S. 946, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979). In cases where the issue is directly addressed it has been uniformly held that the basis for federal jurisdiction is an essential element of the offense. *United States v. Bass, supra; United States v. Platenburg*, 657 F.2d 797 (Former 5th Cir. 1981); *United States v. Brown*, 616 F.2d 844 (5th Cir. 1980); *United States v. McInnis*, 601 F.2d 1319 (5th Cir. 1979); *United States v. Fitzpatrick*, 581 F.2d 1221 (5th Cir. 1978); *United States v. McBryar*, 553 F.2d 433 (5th Cir.), *cert. denied* 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 136 (1977); *United States v. Howard*, 506 F.2d 1131 (2d Cir. 1974); *United States v. Murrah*, 478 F.2d 762 (5th Cir. 1973). The substitution at the trial of a new element of the offense (high seas jurisdiction) for the one contained in the indictment (foreign commerce jurisdiction) is a fatal variance between the indictment and the proof. *See, e. g. Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *United States v. Ylda*, 653 F.2d 912 (5th Cir. 1981). Furthermore, the government, in urging that an improper instruction concerning an essential element of the offense was harmless, fails to satisfactorily distinguish *United States v.*

*Fitzpatrick*, 581 F.2d 1221 (5th Cir. 1978). There, the defendant was indicted for bank robbery and federal jurisdiction was predicated on the allegation that the bank was insured by the FDIC. The evidence at the trial disclosed that the bank was FDIC insured,[9] but the trial judge instructed the jury that in order to convict, it must find that the bank was federally chartered—an alternative basis of federal jurisdiction and one not proved at the trial. Reversing the conviction, the court stated:

> Our problem, however, lies not with the sufficiency of the proof of the bank's insured status but in the fact that the jury was incorrectly charged with respect to the jurisdictional basis for the offense charged. The defendant correctly asserts that it is an essential element of the crime charged that the institution robbed be federally insured on the day of the robbery. The district court's instruction on the presence of a federal charter . . . cannot serve in place of a proper instruction on federally insured status, the basis charged in the indictment and asserted at trial. The defendant thus contends that failure to charge the jury on this essential element amounts to reversible error. We agree. The indictment charging the defendant alleged that the institution robbed was federally insured—not federally chartered. Federal jurisdiction, therefore, depended on the government being able to establish the insured status of the savings and loan association.

581 F.2d at 1223 (5th Cir. 1978). While it is true that in *Fitzpatrick*, unlike here, the instructions varied from the indictment, the comparison only points out the serious nature of the error in this case. In *Fitzpatrick*, the government alleged FDIC status and proved FDIC status, but the judge charged another jurisdictional basis. Here, the government alleged foreign commerce

---

**9.** The government's assertion that *Fitzpatrick* is "clearly distinguishable in that appellant in that case was not charged with, nor did the government prove, the applicable jurisdictional basis," Appellee's Brief at 11, n.5, is a misrepresentation of the facts in *Fitzpatrick*. There,

the indictment alleged the applicable jurisdictional basis (FDIC insured bank) and the court carefully states that it was proved at the trial. *United States v. Fitzpatrick*, 581 F.2d 1221, 1223 (5th Cir. 1978).

(which the undisputed facts show did not exist), proved the alternative high seas jurisdiction, and the judge instructed the jury on foreign commerce. *Fitzpatrick* clearly mandates reversal when the jury is instructed on only one jurisdictional ground which is contradicted by the evidence. In the present case, since the only jurisdictional basis upon which the judge instructed the jury did not exist, the conviction cannot stand.[10]

McRary also contends that his trial in the United States for kidnapping after his conviction of a similar offense in Cuba constituted double jeopardy. Because the first of his assignments of error requires reversal, we do not consider the second claim. For the foregoing reasons, the conviction is

REVERSED.

JAMES C. HILL, Circuit Judge, specially concurring:

I agree that we are bound by *United States v. McInnis*, 601 F.2d 1319 (5th Cir. 1979) and for that reason I concur.

I question the rationale of the holding in *McInnis* and I think that it binds us to an improper result in the present case. The inference could be drawn that the victims were in fact kidnapped at the commencement of the boat trip, but they just didn't know it. They did not discover their predicament until the gun was drawn on the high seas.

If kidnapping occurs I should be hard put to find that it is not actionable merely because the act of kidnapping was accompanied by and concealed by a ruse. Nevertheless, because of *McInnis* the opinion of our panel is required.

---

10. We agree with the government that under the evidence presented at the trial a jury could have found high seas jurisdiction. This observation, while correct, is irrelevant. The jury could not have inferred high seas jurisdiction because they were never informed of that basis for jurisdiction, and the defendant never had the opportunity or notice required to defend against it. While it may very well be true, as McRary admits, that it would have been very

difficult to defend against an allegation of the true jurisdictional facts, McRary cannot be convicted without being provided with adequate notice, an opportunity to defend and a correctly instructed jury to deliberate each element of the offense.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.