TANG YEE–CHUN, a/k/a/ "Tang Lam-lap", Petitioner,

v.

Romolo J. IMMUNDI, United States Marshal for the Southern District of New York, Respondent.

CHAN WAI–KING, a/k/a/ "Rita Chan", Petitioner,

v.

Romolo J. IMMUNDI, United States Marshal for the Southern District of New York, Respondent.

Nos. 87 Civ. 8652 (ELP), 87 Civ. 8653 (ELP).

United States District Court, S.D. New York.

Dec. 28, 1987.

See also, 674 F.Supp. 1058.

M. Cherif Bassiouni, Chicago, Ill., Lawrence H. Schoenbach, New York City, for petitioner Tang.

Susan G. Kellman, New York City, for petitioner Chan.

A.U.S.A. Catherine Gallo, Rudolph W. Guiliani, U.S. Atty., S.D.N.Y., New York City, for respondent.

## ORDER AND OPINION

PALMIERI, District Judge:

In an opinion and order filed November 30, 1987, 674 F.Supp. 1058, this Court certi-

fied the extraditability of Tang Yee–Chun ("Tang") and Chan Wai-king ("Chan") for crimes charged by the government of Hong Kong. The discussion which follows assumes a familiarity with that opinion.

Both Tang and Chan have remained in custody at the Metropolitan Correctional Center since their arrest on March 6, 1987. By the terms of this Court's order of November 30, 1987 their incarceration was to continue until their surrender to the proper authorities. Tang and Chan have now challenged the legality of their continued detention by way of petitions for writs of habeas corpus.

The procedural history of this matter has been marked by petitioners' repeated substitutions of counsel and requests for adjournment. This situation led Judge Cedarbaum of this Court to say at a hearing on August 21, 1987 that "these defendants obviously prefer to stay in the M.C.C., even in prison, rather than go back to Hong Kong". The same comment can be made today with equal validity. The Court set down the hearing for October 19th "peremptorily, which means that there will be no further adjournments". When the hearing finally took place on October 20, 1987, new counsel was admitted *pro hac vice* on motion of Tang's attorney and it was he who took up most of the time for the petitioners. The thrust of his remarks was that the petitioners had been prejudiced by the government's failure to file a formal complaint and to make a detailed correlation of the evidence with the charges. This was an extraordinary contention completely inconsistent with any binding precedent known to the Court as well as with the fact that neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply to extradition proceedings. Fed.R.Crim.P. 54(b)(5); Fed.R.Evid. 1101(d)(3).

It therefore comes as little surprise to this Court that the petitioners' briefs contain extravagant and unsupported state-

ments highly critical of government counsel and of this Court.

### The Hearing of October 20, 1987

 The hearing afforded the petitioners was in compliance with 18 U.S.C. § 3190. *See* Opinion, 674 F.Supp. pp. 1061 *et seq.*

Tang's counsel repeatedly referred to "due process" and even went so far as to claim that in an extradition proceeding the person sought to be extradited was entitled to a presumption of innocence.[1] The Court pointed out that there could be no trial on the merits here and that the issue of guilt or innocence was a matter to be decided by the courts in Hong Kong. The statements of the Court that it would not accept affidavits were intended to address this issue. The real complaint of the petitioners is that they were not afforded a formal trial in the United States to establish their innocence. The petitioners complain that they received only one day to submit explanatory material. This does not reflect what occurred. Not only did petitioners fail to make any offer of proof at the hearing, but their request for the submission of written materials was granted, although they were given a week, not the 30 days they requested. Additionally, any misconception the petitioners may have had about the Court's willingness to hear explanatory material should have been dispelled by the Court's letter to all counsel dated October 26, 1987, which was read verbatim to all counsel by telephone on the morning of October 26 and which gave them an extra day:

> "Having reviewed the minutes of the hearing held on October 20, 1987, I wish to clarify the statement I made that I would not accept any affidavits (transcript p. 66). I was referring to the long stated view that an extradition hearing is not to be turned into an adjudication of guilt or innocence. *Eg. Glucksman v. Henkel*, 221 U.S. 508, 512, [31 S.Ct. 704,

---

1. As a preliminary matter, the Court rejects the petitioners' argument that *Quinn v. Robinson,* 783 F.2d 776, 817 n. 41 (9th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986), requires the review of due process

claims. The portion of the opinion they cite was dictum. The petitioners appear to argue that the Court should create a number of procedural rights for them which do not appear in the statutes or reported cases.

705, 55 L.Ed. 830] (1911); *Melia v. United States,* 667 F.2d 300, 302 (2d Cir.1981). I do not wish to be understood as rejecting in advance an offer of proof containing explanatory, as opposed to contradictory, material. In making any such offer, counsel should be guided by the discussion by Judge Griesa of this Court set forth in *Matter of Sindona,* 450 F.Supp. 672, 684–92 (S.D.N.Y.1978), *writ of habeas corpus denied sub nom Sindona v. Grant,* 461 F.Supp. 199 (S.D.N.Y.1978), *aff'd,* 619 F.2d 167 (2d Cir.1980) [*cert. denied,* 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981)].

"The Court recognizes that this letter may put extra time pressure on counsel. Therefore, counsel for the relators and for the government are granted an extra 24 hours to submit their papers."

Both petitioners took advantage of that clarification: Tang submitted three affidavits and one affirmation, along with many exhibits; Chan submitted an affirmation with twenty seven exhibits. But those submissions, after careful review, were not accepted because they were exculpatory, rather than explanatory, in nature. *See* Opinion at 1063–64, 1066–67. The Court's refusal to accept their offers of proof is not reviewable on petitions for writs of habeas corpus. "The 'wrongful exclusion of specific pieces of evidence, however important, does not render the detention illegal.'" *Messina v. United States,* 728 F.2d 77, 80 (2d Cir.1984) (*quoting Collins v. Loisel, supra* 259 U.S. at 316, 42 S.Ct. at 472).

### The Hearing of October 29

After the hearing of October 20, 1987 it became necessary to hold another hearing and to suffer another change of attorneys, this time in behalf of Chan, because of the attached letter (Appendix A) addressed to the Court by Chan's counsel under date of October 28, 1987. Because Chan's attorney discovered that, without his knowledge, Chan had sworn to a self-incriminating affidavit in an attempt to exculpate Tang, he no longer felt it possible to work with Chan. The Court was constrained to hold a hearing with Chan present. This occurred on October 29. On this occasion Chan stated that her attorney had breached his ethical obligations, thereby opening the door to the entry of still another attorney. When it became clear that the Court would be required to permit new counsel to enter the case, Chan agreed she would make her choice of new counsel by November 3, 1987, five days later, and the Court accepted Chan's stipulation set forth in her own words that she "would accept with the Court's permission to have Mr. Bornstein to withdraw from the case, but with the understanding that incoming lawyer would have the privilege of correcting or supplementing whatever is needed to be supplemented in the memorandum." Ms. Susan Kellman, Chan's fourth attorney since March, thereupon entered the case and is now representing her. In consequence, a memorandum of law and a supplementary affidavit were submitted on November 15, 1987, well over two weeks after the time scheduled for submission had Chan's counsel not been replaced.

Surprisingly, Chan nonetheless complains that there was a deprivation of due process for lack of time, even though papers were submitted on her behalf on November 15, 1987 after she had taken the time she needed with her new attorney. All this spelled out the right to submit explanatory material. She was chargeable with the knowledge of the phone call and letter of October 26, 1987. The Court consistently disapproved of an evidentiary hearing on the issue of petitioners' guilt or innocence and sent its letter of October 26, 1987 to avoid any misunderstanding on this subject.

At the very hearing of October 29, 1987 when she discharged her counsel and before she chose her new attorney, the Court said:

"I am not deciding the guilt or innocence of either Mr. Tang or Miss Chan. I have said that repeatedly, but I don't seem to have made my point sufficiently persuasive because so much of what has been submitted to me are matters that are pertinent to their guilt or innocence but not to the matter of probable cause

for the consideration of the Judge sitting in the extradition proceeding."

As the hearing developed on October 29, 1987, Tang appeared and his counsel were present. The Hong Kong counsel for both Tang and Chan were present. The colloquy which followed made it clear to the Court that Tang and Chan and their counsel were on the friendliest terms and were cooperating with each other. Indeed the briefs presently before the Court have several identical arguments which make their cooperation abundantly clear.

It is ironic that Tang never requested additional time when, in his presence, Chan's time to obtain a new lawyer was extended to five days, with more time to follow ("whatever you need") for the submission of papers. In fact the Court explained in the presence of Tang and his counsel that the entire basis for the briefing schedule of October 20 had evaporated as a result of Chan's discharge of her counsel on October 29, 1987. Notwithstanding this, Tang's counsel never sought to engage the Court in a discussion of a revised schedule or some accommodation in view of all the extra time being taken by Chan. The conclusion seems inescapable that Tang neither wanted nor needed any extra time.

### Alleged Procedural Improprieties

■ What has just been stated reveals the weaknesses of the petitioners' complaint that they suffered because they had only seven days after the October 20 hearing to submit their papers.[2] It is clear from the extensive affidavits offered that they had been preparing for longer than seven days. Indeed, both of the petitioners had been appraised of the case against them for at least six months prior to the hearing. From the outset, they had before

them all the Hong Kong warrants, which set out the particulars of each charge. For six months prior to the evidentiary hearing, they had eighteen volumes of documentation, including several narratives of the events which allegedly took place. They had the daily assistance of Hong Kong attorneys, and the services of accountants and American attorneys during the entire six months leading up to the evidentiary hearing. The Court was aware of these facts when it fixed their briefing schedule.

Their complaint that they did not have enough time is, in any event, not an appropriate issue in a petition for habeas corpus. Because extradition hearings are not governed by any federal rules of procedure, matters such as timing must be left to the extradition Court's sound discretion. Despite the petitioners repeated complaints that they have been denied due process,[3] the fact that they raise substantially no new legal arguments in these petitions leads to the conclusion that they suffered no harm from the Court's exercise of discretion in arranging for a briefing schedule.

### Evidence Claimed to have been Improperly Received

■ Petitioners argue that the Court should not have admitted certain affidavits offered by the government, because they allegedly were signed by witnesses who cannot speak or read English. The petitioners did not then and do not now present any factual basis for that assertion; nor do they identify the witnesses whom they claim have no knowledge of English.

The treaty provides, in relevant part,

"any deposition or statement or other evidence given on oath or affirmed, or

---

2. In point of fact petitioners' time was extended to eight days by the letter and telephone call of October 26, 1987.

3. For instance, by way of a due process claim, Chan asserts "in light of the constrained discovery requests made by Mrs. Chan and the overall weakness of the Hong Kong government's extradition case, discovery should have been granted". This apparently was an attempt to come within the dictum in *Quinn v. Robin-*

*son, supra* at 817 n. 41. But Chan never requested discovery. She also fails to point out any holding of any court granting a writ of habeas corpus for denial of discovery, let alone for not ordering discovery which was not requested. Chan apparently saw this argument to be so self-evident that she omitted reference to it in her brief to the Court. But the point of this argument escapes the Court.

any certified copy thereof shall be received in evidence ...

> (a) if it is authenticated ... by being certified by a judge, magistrate or other competent authority of the requesting Party, or in the case of a copy by being so certified to be a true copy of the original...." Art. VII, 28 U.S.T. at 231.

The relevant statute, 18 U.S.C. § 3190, mandates that "the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the [evidence] so offered [is] authenticated in the manner required". It is the law of this Circuit that at an extradition hearing the proper authentication of documents *conclusively* supports their admissibility. *Galanis v. Pallanck*, 568 F.2d 234, 240 (2d Cir.1977). That interpretation of § 3190 comports with a proper construction of the Treaty. Tang claims that certain affirmations accepted in evidence against him were signed by witnesses who cannot speak or read English; and that the Court "did not deny this fact; rather it sloughed it off as simply technical". The Court was in no position to deny or confirm this assertion and can only refer to the affirmation of the translator for the government of Hong Kong who identifies thirteen witnesses whose affirmations she translated. The Court was bound by statute, 18 U.S.C. § 3190, to accept these documents when they were duly authenticated by the United States Consul General at Hong Kong. Additionally, the evidence indicates that the most important affirmations were not translated from Chinese to English, but appear to have been made by persons with a knowledge of English. The affirmation of the Hong Kong translator, Choi Chow Wai-chun (affirmed March 31, 1987), while identifying some Chinese witnesses, makes no mention of the most important witnesses. Thus the record contains no indication that David Mace (a partner of the accounting firm of Arthur Anderson who was hired by the Hong Kong government as an expert to sort out the events surrounding the collapse of Tang and Chan's company), Agnes Kwok (the nominal president of that company), Eva Hui (one of Tang's lieutenants) or any of the Hong Kong investigatory authorities cannot speak or read English. Petitioners' assertions to the contrary are without any basis in the record before the Court. It cannot be said that there was not *any* competent evidence before the extradition Court; and more than that is not reviewable on a petition for habeas corpus. *Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925).

There is nothing in the Treaty or the applicable statute requiring the Court to undertake an independent inquiry into the accuracy of any translations submitted with a formal request for extradition. Such a requirement would place an unbearable burden upon extradition courts and seriously impair the extradition process.

### Probable Cause

■ Petitioners argue that there is "no evidence" that the loans involved were false, that they had knowledge of their falsity, or that Tang directed the creation of the false loans or had the requisite specific intent.

As the Court held, ample evidence was presented establishing probable cause to believe that Tang and Chan directed the making of fraudulent loans to persons who did not exist or who had no knowledge of the loans.[4] The Court marshalled the evidence and carefully reviewed it in its Opinion of November 30, 1987, 674 F.Supp. at 1063–1067. It would be beyond the scope of review permitted on a habeas petition to do so again. *Fernandez v. Philips, supra.* Tang's assertion that the Court "summarily dismissed the issue of probable cause" belies the careful attention given to the issue by the Court.

### Double Criminality

■ A prominent element of extradition treaties has been the requirement that the

---

4. As the Court also held, their intent can be inferred from their behavior, including Tang's flight from Hong Kong and his use of aliases. The fact that he may now be a resident alien in the United States does not affect this conclusion.

crime for which an accused is extradited be criminal pursuant to the laws of both the requesting and the requested nations. This "double criminality" requirement has been held to require two findings by an extradition Court: (1) that the acts alleged to have been taken by the accused, if proven, would be crimes under United States law; and (2) that the crime charged by the requesting nation be substantially analagous to a United States crime. *Shapiro v. Ferrandina, supra,* 478 F.2d at 909.

Petitioners attack the finding that the acts they allegedly undertook would be crimes under United States law. There is evidence that they undertook a large scale scheme to defraud and used international telephone and telegraph services to execute it. There is evidence that they and their agents made fraudulent entries in the books of the bank they controlled. In the United States, those activities are criminal. *See* Opinion 674 F.Supp. at 1063–66.

Petitioners also attack the finding that the Hong Kong crimes they are charged with having committed are substantially similar to United States crimes. But their argument need not be addressed. They fail to attack the extradition Court's finding that 18 U.S.C. § 1001 is substantially similar to both of the Hong Kong ordinances they are accused of violating. Opinion 674 F.Supp. at 1067. They fail to attack the extradition Court's finding that 18 U.S.C. § 1006 is substantially similar to both of the Hong Kong ordinances they are accused of violating. *Ibid.*

18 U.S.C. § 1005 is also substantially similar to both of the Hong Kong ordinances at issue. *Ibid.* Petitioners attack that finding by asserting that an "essential element" of the offense is that the falsified records or documents at issue belong to a bank in the Federal Reserve System. The

Hong Kong ordinances are generalized, they argue, while § 1005 applies specifically and only to certain American banks. Their reliance on *United States v. Mize,* 756 F.2d 353 (5th Cir.1985) and *United States v. Bliss,* 642 F.2d 390 (10th Cir.1981) is misplaced. *Mize* holds that proof of a bank's status as a "Federal Reserve Bank, member bank, national bank or insured bank" is an essential element of a conviction under § 1005, and *Bliss* assumes that proposition. But the necessity of proving that element derives from the fact that it is the jurisdictional predicate of the federal court's judgment. *See Mize,* 756 F.2d at 356 ("federal jurisdiction depended upon the government's establishing the Bank's status as a 'member bank' ").[5] Were the petitioners' argument to be accepted, no federal crime could be substantially similar to a foreign crime for purposes of satisfying the double criminality requirement. This incongruous result is averted by accepting the notion that what is an essential element for one purpose—conviction after a criminal trial in the United States—is not relevant for another—assuring that a person is not extradited on the basis of acts which would not subject him to liability if committed in the United States.

New York Penal Law § 175.10 is substantially similar to both of the Hong Kong ordinances at issue. *See* Opinion 674 F.Supp. at 1067. The petitioners argue that the level of intent required by § 175.10 "sharply distinguishes" it from one of the Hong Kong ordinances (§ 19(1)), but fail to make the same argument with regard to the other (§ 21(1)). In any event, the distinction that the petitioners attempt to draw is not persuasive. § 175.10 requires the prosecutor to prove an intent to defraud, which the petitioners contend means to cheat or deprive another of some proper-

5. *Accord United States v. Trevino,* 720 F.2d 395, 400–01 (5th Cir.1983) (*quoting United States v. Platenburg,* 657 F.2d 797, 799 (5th Cir.1981) ("federal jurisdiction depends on this status"); *United States v. Fitzpatrick,* 581 F.2d 1221, 1223 (5th Cir.1978) ("insured status ... had to be proved in order to establish federal jurisdiction"); and *United States v. Murrah,* 478 F.2d 762, 764 (5th Cir.1973) ("it is necessary to allege and prove it in order to establish federal juris-

diction")); *United States v. McRary,* 665 F.2d 674, 678–79 (5th Cir.1982) ("when a federally created crime involves an area traditionally left to the domain of the states, the jurisdictional authority of the United States becomes a crucial part of the proof") (*citing United States v. Bass,* 404 U.S. 336, 349–50, 92 S.Ct. 515, 523, 30 L.Ed. 2d 488 (1971)), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2306, 73 L.Ed.2d 1307 (1982).

ty or right. § 19(1) apparently requires the prosecutor to prove the accused "dishonestly, with a view to gain for himself or another or with the intent to cause loss to another" committed the acts in question. The petitioners argue that the fact that a person could be convicted under the Hong Kong statute for acts taken merely with a view to gain for himself and not with the intent to cause loss to another makes the New York statute dissimilar for purposes of this analysis. Though the two statutes are phrased differently, they both make the same activity criminal.

The Supreme Court cases which have addressed the issue do not support the petitioners' position. In *Collins v. Loisel*, 259 U.S. 309, 311–12, 42 S.Ct. 469, 470, 66 L.Ed. 956 (1922), the accused contended that the crime of "cheating", of which he was accused under the law of India, merely required "a promise of *future* performance which the promisor does not intend to perform, while to convict of obtaining property by false pretenses [the American counterpart] it is essential that there be a false representation of a state of things *past or present*" (emphasis supplied). That fine distinction appears remarkably similar to the one drawn by the petitioners. The Court, per Justice Brandeis, rejected it: "The law does not require that … the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions."

In *Kelly v. Griffin*, 241 U.S. 6, 13–14, 36 S.Ct. 487, 489, 60 L.Ed. 861 (1916), the accused contended that he could not be extradited to Canada for perjury because that country defined perjury as covering false evidence in a judicial proceeding "whether such evidence is material or not". In contrast the law of Illinois, the requested state from which the accused was to be sent, required materiality. The Court, per

Justice Holmes, dismissed the argument: "As to this it is enough to say that the assertions charged here were material in a high degree, and that the treaty is not to be made a dead letter because some possible false statements might fall within the Canadian law that perhaps would not be perjury by the law of Illinois."

Finally, in *Wright v. Henkel*, 190 U.S. 40, 58, 23 S.Ct. 781, 785, 47 L.Ed. 948 (1903), the Court rejected the argument that the distinctions between the British fraud statute's intent requirement and a similar New York statute's treatment of intent should prohibit extradition. "Absolute identity is not required. The essential character of the transaction is the same, and made criminal by both statutes." *Ibid.*

The petitioners' arguments are similar to those made in *Collins, Kelly* and *Wright* which were firmly rejected.[6] Their reliance on *United States v. Rauscher*, 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425 (1886) and its progeny is misplaced. Those cases address the rights of persons who stand accused of crimes by the United States and who invoke the "principle of speciality" in order to limit their prosecution once they have been returned to stand trial in this country. Those cases are inapplicable to the inverse situation. As is explained in *Shapiro v. Ferrandina, supra*, 478 F.2d at 906 & n. 10, the principles upon which extradition is based, as well as the Constitution's separation of powers doctrine and the limitations imposed by Article III, restrain a Court from rendering an advisory opinion as to what extent a foreign court should prosecute a person who has been extradited. Nor are the United States courts' tightly bound to the particular charges which were requested. *See Fiocconi v. Attorney General*, 462 F.2d 475, 478–81 (2d Cir.), *cert. denied*, 409 U.S. 1059, 93 S.Ct. 552, 34 L.Ed.2d 511 (1972).

---

6. Their reliance on *Caplan v. Vokes*, 649 F.2d 1336 (9th Cir.1981) is misplaced. The extradition court there adapted verbatim the government's proposed findings of fact, which formed the bulk of a 175 page document. The court's sole finding there consisted of two sentences, which disposed of 60 charges involving forgery, false accounting and at least four sections of the British Theft Act. Most important, the record in that case "simply [did] not permit … review … because it contain[ed] nothing from which [the appellate Court could] discern the extradition court's reasoning as to extraditability". *Id* at 1343–44.

### The Claimed Lack of Notice

■ The petitioners assert that they were inadequately informed of the charges made against them because only one complaint was filed by the United States Attorney, and this came before the filing of the formal request for extradition. The petitioners would have a second complaint itemize and analyze the federal crimes which the United States Attorney believes are substantially similar to the Hong Kong crimes of which they stand accused. The Court rejected this contention since it had no basis in binding precedent. *See* Opinion 674 F.Supp. at 1069. Imposing this requirement on the extradition process would be unwise for two reasons. First, the identification of specific crimes serves no purpose in light of the petitioners' claim that "no" United States crime is substantially analogous to the Hong Kong crimes at issue. Because they undertake to demonstrate that all United States crimes are dissimilar, the identification of specific crimes in the complaint would be pointless. Second, such a requirement would thwart the flexibility with which pleadings in extradition cases are treated in order to prevent foreign governments from being subjected to technical pleading requirements in the United States courts. *See, e.g. Shapiro v. Ferrandina*, 478 F.2d 894, 899–900 (2d Cir.) (complaint's erroneous statement of petitioner's whereabouts does not render it defective), *cert. dismissed*, 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973); *United States ex rel. Rauch v. Stockinger*, 269 F.2d 681, 687–88 (2d Cir.) (complaint's lack of specification of overt acts and omission of the words "with intent" does not render it defective), *cert. denied*, 361 U.S. 913, 80 S.Ct. 257, 4 L.Ed.2d 183 (1959), *reh'g denied*, 361 U.S. 973, 80 S.Ct. 584, 4 L.Ed.2d 553 (1960). Therefore, the Court rejects petitioners "acknowledgement" that the United States Attorney's Hearing Memorandum constitutes an "Extradition Complaint". It was a legal brief. It was not a pleading.

### Absence of Warrants and Sufficiency of the Statement of Facts

■ Tang renews his complaint that extradition should not lie for charges 45 and 46. He apparently misunderstands the limited role an extradition Court must play. It is not for the Court to grant or deny extradition. That decision is properly left to the Secretary of State. The Court once again points out the fact of the missing warrants, but notes that sufficient evidence exists to sustain the charges. *See* Opinion 674 F.Supp. at 1060–61 (*citing Hill v. United States*, 737 F.2d 950, 925 (11th Cir. 1984)).

■ He also for the first time complains of a missing "statement of facts" for certain of the charges against him. This contention is frivolous. The facts surrounding each and every charge against Tang were sufficiently stated in the Hong Kong government's "Statement of Facts". The charges at issue, 28–31, are covered in paragraph 16, which reads in part: "On different dates between the 2nd January, 1982 and the 15th June, 1982 A & P recorded in its books of account further false loans totalling HK$ 3,810,000 to CHIU Sik-yin, LEUNG Ngan-yuk, LO Lai-hing, Carmen WONG, William CHEUNG and to Luxembourg finance Company Ltd...." Charges 28–31 all involve false loans allegedly made in January 1982.

### The United Kingdom's Ability to Abide by the Treaty

■ Chan argues, as she did at the extradition hearing, that this Court must demand assurances from the United Kingdom that it will abide by the Treaty's terms. The Court considered Chan's argument and found it meritless. *See* Opinion of November 30, 1987, 674 F.Supp. at 1068–69. The Court found the possibilities raised by her alleged expert to be too remote and speculative to shock the Court's sense of decency, and to be less severe than the possibilities facing others who had fruitlessly raised the same argument before other courts. *See id.* 674 F.Supp. at 1068. Her petition raises nothing new, and ignores the applicable precedents. To accept her position, the Court would have to impinge upon the explicit authority of coordinate branches of government to make treaties. *See e.g., Terlinden v. Ames*, 184

U.S. 270, 288, 22 S.Ct. 484, 491, 46 L.Ed. 534 (1902) ("the question whether power remains in a foreign state to carry out the treaty obligations is in its nature political and not judicial"). Her desire to remain in the United States on humanitarian grounds can be raised before the Secretary of State, not before the Courts. *Sindona v. Grant,* 619 F.2d 167, 174 (2d Cir.1980).

### Conclusion

The procedures pursuant to which petitioners were certified to be extraditable to Hong Kong comported with applicable treaty and statutory provisions. The petitions for writs of habeas corpus are denied.

The stay previously granted by this Court shall continue until such time as the Court of Appeals disposes of a motion for its continuance, provided such motion is made not later than January 12, 1988.

SO ORDERED.

## APPENDIX A

LAW OFFICES OF

### CARL M. BORNSTEIN
225 BROADWAY
NEW YORK, NEW YORK 10007

CARL M. BORNSTEIN

MICHAEL SHAPIRO
OF COUNSEL

TELEPHONE
(212) 587-0800

**RECEIVED**

OCT 23 1987

**Judge Palmieri's Chambers**

October 28, 1987

Hon. Edmund L. Palmieri
United States District Judge
United States Courthouse
Foley Square
New York, New York 10007

Re: United States v. Tang Yee-Chun and Chan Wai-King

Dear Judge Palmieri:

Please accept this letter as my application for permission of the Court to withdraw as the attorney for Ms. Chan Wai-King in the extradition proceeding captioned above.

Enclosed herewith as Exhibit A is a memorandum of law I prepared on her behalf and which was to be filed by close of business today. Also enclosed as Exhibit B is the affirmation of Professor Hungdah Chiu which is the basis for Point III of the memorandum and, as Exhibit C, my letter to the Court requesting permission to supplement Point III which I hope is self-explanatory.

As this material was being completed throughout the day and into the night of October 27, 1987, I learned that my client recently had prepared an affidavit without my knowledge and given it to the lawyers for her co-defendant Mr. Tang Yee-Chun. This was done by my client against my explicit continuing advice and as this letter is being written, I have not seen a copy of the affidavit. My client has not given me a copy of the affidavit.

I initially learned about the existence of the affidavit from both Professor Bassiouni and Mr. Schoenbach, counsel for Mr. Tang. I have told them both orally and in writing that it was prepared without my knowledge and that in light of all the circumstances, I object to its being submitted. Nevertheless, I was told to expect it to be part of the Tang submission.

This action demonstrates that the client has no faith in my representation and that it has become unreasonably difficult for me to represent my client effectively. See Code of Professional Responsibility, DR 2-110(C)(1)(d). . Other recent

LAW OFFICES OF
*CARL M. BORNSTEIN*

Hon. Edmund L. Palmieri
October 28, 1987
Page Two

events also contribute to this difficulty and, in totality, indicate good cause for this Court to allow me to withdraw. Id. DR 2-110 (C)(3) and (6).

I am submitting the enclosed exhibits directly to the Court so that my client will not be prejudiced. But not having seen the affidavit she prepared, I cannot determine whether there may be conflicting representations between the exhibits and her affidavit (though I do not believe this to be the case).

I am aware of the Court's commitment to be away from the Courthouse on official business after October 30, 1987. Should a conference or hearing be necessary, I am available at the court's convenience all day on October 28, 1987 and after 11 A.M. on October 29, 1987, and October 30, 1987.

Respectfully submitted,

CARL M. BORNSTEIN

CMB:as
Enclosures

cc: AUSA Catherine Gallo
 Lawrence H. Schoenbach, Esq.
 M. Cherif Bassiouni, Esq.
 Richard Wong, Esq.
 Dixon Tang, Esq.
 Ms. Chan Wai-King