**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert Arthur FITZPATRICK,**
**Defendant-Appellant.**

**No. 77–5516.**

United States Court of Appeals,
Fifth Circuit.

Oct. 16, 1978.

**1222**

Robert Arthur Fitzpatrick, pro se.

Thomas C. MacDonald, Jr., (Court-appointed), Tampa, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Gary J. Takacs, Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before CLARK, FAY and VANCE, Circuit Judges.

PER CURIAM:

Robert Arthur Fitzpatrick appeals from his conviction for armed robbery of a federally insured bank. The defendant raises several errors on appeal, but we concern ourselves only with the failure of the district judge to instruct the jury that the government had to establish that the institution robbed was federally insured at the time of the robbery. We conclude that the failure to instruct the jury on this essential element of the offense charged constitutes a trial error which requires reversal.

On November 30, 1976, an indictment was issued charging in Count I that the defendant violated 18 U.S.C. § 2113(a) by taking by force, violence, and intimidation certain money belonging to and in the care, custody, control, management, and possession of the Home Savings and Loan Association.[1] Count II of the indictment charged the identical offense but added the allegation that in committing the offense the defendant assaulted or put in jeopardy the lives of certain persons by use of a firearm in violation of 18 U.S.C. § 2113(d).[2] Both counts of the indictment alleged that the deposits of the Home Savings and Loan Association were insured by the Federal Savings and Loan Insurance Corporation.

■ Subsection (g) of 18 U.S.C. § 2113 in effect provides three alternative bases

---

1. 18 U.S.C. § 2113(a) provides:

   Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

   Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—

   Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

2. 18 U.S.C. § 2113(d) provides:

   Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

for federal jurisdiction resulting from a robbery of a savings and loan institution. A violation of the provisions of 18 U.S.C. § 2113 will occur if the savings and loan association is either a federally chartered institution, a federally insured institution, or a federal credit union as defined in Section 2 of the Federal Credit Union Act.[3] In the case before us, the indictment alleges that the deposits of "Home Savings and Loan Association" were, at the time of the robbery, insured by the Federal Savings and Loan Insurance Corporation. Thus, proof of the insured status of Home Savings and Loan Association was an essential element of the crime charged, and indeed had to be proved in order to establish federal jurisdiction. *See United States v. Murrah*, 478 F.2d 762, 764 (5th Cir. 1973). The district judge charged the jury with respect to a different jurisdictional base—the existence of a federal charter for the institution. While the defendant did not object to this instruction, we may review it on appeal under the plain error doctrine, because this erroneous instruction concerning the essential jurisdictional element of the crime charged affected substantial rights of the defendant. *See United States v. Bosch*, 505 F.2d 78 (5th Cir. 1974); *Bearden v. United States*, 320 F.2d 99 (5th Cir. 1963); *cf. United States v. Urbana*, 412 F.2d 1081 (5th Cir. 1969).

■ At the trial on June 21, 1977, the comptroller of Home Savings and Loan Association testified that the institution was presently insured by the federal government. The comptroller also identified the government's exhibit number 9 as being the institution's Certificate of Insurance. This certificate was issued in 1966, and established that the institution had been federally insured on October 16, 1966. Although the government obviously could have done a much better job of proving the bank's insured status at the date of the crime, a jury can reasonably infer that an institution was federally insured on the date of a robbery if it is presented with evidence showing that the institution was insured both prior to that date and recently thereafter. *See, e. g., United States v. Rowan*, 518 F.2d 685 (6th Cir. 1976); *see also United States v. Clemons*, 532 F.2d 122 (8th Cir. 1976); *United States v. Higgans*, 507 F.2d 808 (7th Cir. 1974); *United States v. Murrah*, 478 F.2d 762 (5th Cir. 1973); *United States v. Hamilton*, 452 F.2d 472 (8th Cir. 1971); *Ahlstedt v. United States*, 325 F.2d 257 (5th Cir. 1963).

■ Our problem, however, lies not with the sufficiency of the proof of the bank's insured status but in the fact that the jury was incorrectly charged with respect to the jurisdictional basis for the offense charged. The defendant correctly asserts that it is an essential element of the crime charged that the institution robbed be federally insured on the day of the robbery. The district court's instruction on the presence of a federal charter—an alternative statutory basis for federal jurisdiction which the government never charged and never sought to prove—cannot serve in place of a proper instruction on federally insured status, the basis charged in the indictment and asserted at trial. The defendant thus contends that failure to charge the jury on this essential element amounts to reversible error. We agree. The indictment charging the defendant alleged that the institution robbed was federally insured—not federally chartered. Federal jurisdiction, therefore, depended on the government being able to establish the insured status of the savings and loan association.

■ The judgment of the district court must be reversed. It is, however, with great reluctance that we reach this result. The guilt of Fitzpatrick was established beyond a reasonable doubt, but the first

---

**3.** The full text of 18 U.S.C. § 2113(g) provides:

As used in this section the term "savings and loan association" means any Federal savings and loan association and any "insured institution" as defined in section 401 of the National Housing Act, as amended, and any "Federal credit union" as defined in section 2 of the Federal Credit Union Act.

trial is for naught and the inconvenience and expense of a retrial will be necessary.[4]

REVERSED.

4. Retrial of the defendant is not prohibited by the Double Jeopardy Clause of the Fifth Amendment since our reversal is not predicated on evidentiary sufficiency. The Supreme Court has recently explained in *Burks v. United States*, —— U.S. ——, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) that a retrial is permissible when reversal is prompted by trial error.

In short, reversal for trial error, as distinguished from evidentiary insufficiency does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has

been convicted through a judicial process which is defective in some fundamental respect, e. g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. *Id.* at ——, 98 S.Ct. at 2149.